UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

M.V., Individually and as Parent and Next Friend of
Minor, A.V., a child with a disability,

                                                    Plaintiff,

   -v.-                                                                   1:06-CV-0571
                                                                              (LEK/RFT)

SHENENDEHOWA CENTRAL SCHOOL DISTRICT,

                                                 Defendant.
_____

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

M.V. ("Plaintiff"or "Parent"), acting on her own behalf and as representative of her minor child A.V., brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1485, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Article 89 of the New York State Education Law.  N.Y. EDUC. LAW §§ 4401-4410-b (McKinney 2007).  Plaintiff is seeking review of an administrative decision of the State Review Officer ("SRO") that declined to award tuition reimbursement for her placement of A.V., a disabled student, in a private school for the 2004-2005 school year.  Compl. (Dkt. No. 1) at ¶¶ 1, 40, 41.  Plaintiff also seeks attorneys' fees and expenses pursuant to 20 U.S.C. § 1415(i)(3).  Id. at ¶ 43.

Defendant Shenendehowa School District ("Defendant" or "District") answered and cross claimed, asserting that the SRO had "ignored the facts and misapplied the law when he found that the Hampshire Country School was a proper placement for A.V."  Am. Answer with Countercl.

---

[1] For printed publication by the Federal Reporters.

1

(Dkt. No. 5) at ¶¶ 2, 34.  Defendant also seeks attorneys' fees and costs.  Id. at ¶ 3.

Presently, Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Notice of Mot. (Dkt. No. 13) at 1.

Defendant opposes and cross motions for summary judgment.  Notice of Mot. (Dkt. No. 14) at 1.

## II. Statement of Facts

### A. Background

A.V. was born on April 24, 1991.  Statement of Material Facts Not in Dispute (hereinafter "Material Facts") (Dkt. No. 14, Attach. 9) at ¶ 1.  He first attended District schools in September of 2000 as a student in the regular fourth grade classroom.  Id.  Shortly after beginning the fourth grade, A.V.'s parents referred him to the District's Committee on Special Education ("CSE") because they were concerned that he was experiencing difficulty with basic academics.  Id.  After evaluating A.V., the CSE determined in February of 2001 that A.V. was a student with a disability.  Id. at ¶¶ 2-5.

Since the incipient evaluation in 2000, A.V.'s educational needs have been evaluated at numerous points in his school career by various professionals.  As a result, A.V. has received several diagnoses, including Pervasive Developmental Disorder.  Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 1.  A.V.'s level of functioning was described in August of 2004 as "requiring constant adult support to help him master basic classroom survival skills and support in the areas of organization, work completion, social interactions and maintaining focus in class."  Id. at 2.

In the fall of 2003, A.V. began to display escalating inappropriate classroom behaviors in school, several of which were severe enough to warrant out-of-school suspensions.  Id. at 1.  From the period between November 23, 2003, and August 9, 2004, the CSE met at least five times to try

to formulate an effective individual educational plan ("IEP") for A.V.  The issue of an out-of-district placement was first raised by A.V.'s parents at the November 23, 2003 meeting.  Material Facts (Dkt. No. 14, Attach. 9) at ¶¶ 15-16.  At that meeting, the District agreed to research appropriate outside placements for A.V.  Id. at ¶ 16.

During the spring of 2004, District representatives and Plaintiff visited a number of out-of-district special education programs.  Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 1.  Also, A.V. was evaluated by Dr. Sharma, a neuropsychologist, in May 2004.  Material Facts (Dkt. No. 14, Attach. 9) at ¶ 28.  Dr. Sharma recommended that A.V. not be placed in an environment for "children with primary externalizing behavior problems or emotional disturbance," as such a placement would be inappropriate and contrary to A.V.'s best interest.  Pl.'s Mem. of Law (Dkt. No. 21, Attach. 2) at 6.  On that basis, A.V's parents decided that the programs they had visited were inappropriate for A.V.  Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 1.

As a result, by June 1, 2004, A.V.'s parents became concerned that no program would be in place by the start of the 2004-2005 school year and wrote a letter to the District expressing their concerns.  Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 18.  During July and August 2004, parents investigated private residential schools for their son without the District's assistance.  Id. at 3.  Parents, along with A.V., visited Hampshire Country School, located in New Hampshire, on August 25, 2004, and Hampshire Country School notified them of A.V.'s acceptance the following day.  Id.  A.V.'s parents unilaterally decided to place him at Hampshire Country School on the day he was accepted.  Material Facts (Dkt. No. 14, Attach. 9) at ¶ 49.  Parents mailed a letter to the District on the same day, notifying it of their decision to privately place A.V.  Pl. Mem. of Law (Dkt. No. 13, Attach. 7) at 3.

Meanwhile, in a letter dated August 20, 2004, District notified A.V.'s parents that an intake interview had been scheduled for August 27, 2004 at one of the District's proposed residential placements in Washington, Connecticut. See Material Facts (Dkt. No. 14, Attach. 9) at ¶¶ 44, 45. The interview was ultimately cancelled because A.V.'s parents did not contact the facility to confirm the appointment. Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 3.

**B. The Administrative Proceedings**

As required by the IDEA in order to obtain tuition reimbursement, A.V.'s parents requested an impartial hearing by letter to the District dated April 11, 2005. Id. at 4. The hearing commenced on May 16, 2005, and continued over eight days. Material Facts (Dkt. No. 14, Attach. 9) at ¶ 57. In a twenty-five page decision dated October 11, 2005, the Impartial Hearing Officer ("IHO") determined that: 1) parents were not entitled to reimbursement for Summit Camp (a private summer program); 2) the District had failed to provide A.V. with a free and appropriate public education; 3) Hampshire Country School was an appropriate placement for A.V.; and 4) the equities favored parental tuition reimbursement for Hampshire Country School, excluding the cost of transportation. Id. at ¶¶ 58, 59.

The District appealed the decision of the IHO to the State Review Office ("SRO") of the State Education Department. Id. at ¶ 60. After a review of the record, the SRO determined that: 1) parent prevailed as to the District's failure to provide a free and appropriate public education ("FAPE"), which had not been contested by the District at this stage of the proceeding; 2) based on the record, Hampshire Country School was an appropriate placement for A.V.; 3) the equities did not favor reimbursement of the parents due to their failure to have A.V. attend "intake evaluation interviews" during the last week of August 2004; and 4) all of the remaining contentions by both

4

parties were without merit.  State Review Officer Appeal No. 05-116 (hereinafter "SRO Decision") (Dkt. No. 13, Attach. 4) at 8, 9, 13.

### III. Discussion

**A. Standard of Judicial Review**

As a practical matter, "summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions." Wall by Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996).  In an IDEA action, a motion for summary judgment turns on "whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed.'" Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003) (quoting A.S. ex rel S. v. Norwalk Bd. of Educ., 183 F. Supp. 2d 534, 539 (D. Conn. 2002)).  A summary judgment motion in an IDEA case is, more accurately, "an appeal from an administrative determination, not a summary judgment." Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005) (quoting Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 892 (9th Cir. 1995)).

Administrative rulings by hearing and review officers are "subject to 'independent' judicial review." Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998) (quoting Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 205 (1982)).  Courts may conduct independent review, but it is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they review." Rowley, 458 U.S. at 206.  Administrative proceedings must be given due weight by district courts, because the federal courts do not possess the "specialized knowledge and experience" necessary to determine

"persistent and difficult questions of educational policy." Id. at 206 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42 (1973)).  Further, independent judicial review of an IDEA petition is based on a preponderance of the evidence standard.  20 U.S.C. § 1415(i)(2)(C) (2006); M.S. v. Yonkers Bd. of Educ., 231 F.3d 96, 102 (2d Cir. 2000).  In reviewing a hearing officer's decision, the court must give substantial deference to the educational determinations of the hearing officer and make an independent judgement, based on the preponderance of the evidence, as to whether that evidence supports the findings and conclusions of the hearing officer.  Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380-81 (2d Cir. 2003).

**B. Provision of a Free and Appropriate Public Education**

As a threshold matter in establishing whether tuition reimbursement is warranted, an IEP recommended by the school district must be analyzed to determine whether it fails to provide the student with a free and appropriate public education ("FAPE") as required by the IDEA.  See Burlington Sch. Comm. v. Dep't of Educ., 471 U.S. 359, 370 (1985); Frank G. v. Bd. of Educ., 459 F.3d 356, 364 (2d Cir. 2006).

The IHO found that the District had failed to provide A.V. with a FAPE.  In its appeal to the SRO, the District did not contest this finding.  Before this Court, the District admits that it failed to provide a FAPE.  After an independent review, it is clear that the record amply supports the findings of the IHO and SRO with respect to the lack of a FAPE provided by the District.

**C. Appropriateness of the Unilateral Placement**

If a student has not been provided with a FAPE as required by the IDEA, determining whether parents are entitled to reimbursement proceeds to evaluation of the appropriateness of the private placement made by the parents.  See Burlington, 471 U.S. at 370; Frank G., 459 F.3d at 364.

The party initiating the impartial hearing has the burden of persuasion as to the appropriateness of the private placement. See Schaffer v. Weast, 546 U.S. 49, 57-59 (2005). In establishing the appropriateness of a unilateral placement, parents need not show that the private placement is ideal in every respect, but they must show that the special needs of the student are met, and that the student is able to benefit from the instruction provided by the placement. Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007).

In the present case, both the IHO and SRO agreed that Hampshire Country School was an appropriate placement for A.V. The Defendant maintains its claim that Hampshire Country School was not an appropriate placement for this student. However, Defendant failed to present to the Court any evidence regarding the appropriateness of the placement that was not already considered by both the IHO and SRO. After conducting an independent review of the record, it is clear that it amply supports the administrative rulings of both the IHO and SRO with respect to the appropriateness of the parents' unilateral placement.

**D. Tuition Reimbursement**

As the District failed to provide a FAPE for A.V. and Hampshire Country School was an appropriate placement, the sole remaining issue is whether, considering all relevant facts, Plaintiff is entitled to reimbursement. If a student is not provided with a FAPE and the private placement determined by the parents is deemed appropriate, "the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief." Gagliardo, 489 F.3d at 112 (citing Florence Cty. Sch. Dist. Four v. Carter, 510 U.S. 7, 16 (1993)). Further, the IDEA enables district courts to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii) (2006).

The decisions of the SRO and IHO differ only with respect to the issue of tuition reimbursement. In making a record-based determination that the equities did not favor reimbursement, the SRO rejected the IHO's conclusions about witness credibility without experiencing the testimony of those witnesses. Wolfe v. Taconic Hills Cent. Sch. Dist., 167 F. Supp. 2d 530, 534 (N.D.N.Y. 2001). The major factor given by the SRO for denying reimbursement was the parents' act of failing to make their child available for intake interviews at two of the District's recommended placements. SRO Decision (Dkt. No. 13, Attach. 4) at 13. The SRO finds support for his view that it is equitable to deny reimbursement based solely on this factor only in a few SRO decisions, which certainly do not bind this Court. Id. at 14-15. The Court finds no decision by a federal court holding that such an extreme result is appropriate here.

Furthermore, in reaching his decision, the SRO incorrectly characterized facts that were apparently central to his analysis:

> the record reflects that respondents knew about the interview dates at these two potential state-approved residential placements because personnel from each facility contacted respondents, directly, to either advise of the interview date or to schedule the interview date.

SRO Decision (Dkt. No. 13, Attach. 4) at 13. In fact, Plaintiff and Defendant agree that only one facility directly scheduled an intake interview with A.V.'s parents. Material Facts (Dkt. No. 14, Attach. 9) at ¶¶ 45-46; Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 12-13. The intake interview with the other facility was scheduled by the District for August 27, and the District notified the parents of this interview by letter dated and mailed on Friday, August 20. Id. Although A.V.'s parents spoke via telephone with a representative of that facility, they agreed only to accept information from that facility. Id.

After an independent review of the record, the Court finds that the IHO's argument in support of awarding tuition reimbursement to the Plaintiff is more persuasive. In evaluating equitable considerations and the conduct of the parents of A.V., the IHO concluded that: 1) parents cooperated with the CSE by attending CSE meetings and participating fully at those meetings; 2) parents communicated concerns, both at meetings and thereafter, to District in writing; 3) parents appeared "to have been as active as staff in seeking an out-of-district placement for Student"; and, 4) with regard to the intake interviews focused on by the SRO, parents had investigated placements proffered by the District by telephone and internet and "reasonably determined that such were not appropriate, so that no visit was necessary." IHO Decision (Dkt. No. 11) at 21-22. Further, the IHO determined that parents did not receive correspondence from Defendant advising of the intake visit on August 27, 2004 until after parents had placed A.V. at Hampshire Country School. Id. at 22. The IHO concluded by stating that "[a]ll other instances of noncooperation were reviewed by the IHO and were found to be without merit." Id.

The Court is more convinced by the credibility determinations and reasoning of the IHO than those of the SRO. Overall, the Court sees Plaintiff as a concerned parent who took great efforts to find an appropriate placement for her son's special needs. Plaintiff's actions were not unreasonable, given her legitimate concerns about the District's ability to make an appropriate placement for A.V. Moreover, it would be inequitable to reward the District for its admitted failure to comply with IDEA.

### IV.   Conclusion

Based on the foregoing, the Court finds that Plaintiff is entitled to tuition reimbursement for

the 2004-2005 school year.  It is hereby

**ORDERED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 14) is **DENIED**; and it is further

**ORDERED**, that the decision of the State Review Officer is **REVERSED** to the extent that it denied tuition reimbursement; and it is further

**ORDERED**, that Plaintiff is entitled to reimbursement, with interest, from Defendant School District for tuition expenses, excluding transportation, associated with her son A.V.'s placement at Hampshire Country School for the 2004-2005 school year; and it is further

**ORDERED**, that Plaintiff is entitled to reasonable attorneys fees and expenses pursuant to 20 U.S.C. § 1415(i)(3)(B); and it is further

**ORDERED**, that Plaintiff shall file with this Court and serve a verified application for tuition reimbursement, attorneys' fees and expenses in accordance with the requirements of 20 U.S.C. § 1415(i)(3)(B); and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   January 02, 2008
         Albany, New York

Lawrence E. Kahn
U.S. District Judge